**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JACKELYN KELLER,

               Plaintiff,

      v.

ABOUT, INC. d/b/a DOTDASH,

               Defendant.

Case No:  1:21-cv-00228 (JMF)(OTW)

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF DOTDASH'S**
**MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

Dated:  February 2, 2021

HUNTON ANDREWS KURTH LLP

Robert T. Quackenboss
Sima Kazmir
200 Park Avenue
New York, New York 10166
(212) 309-1000
rquackenboss@hunton.com
skazmir@hunton.com

Jason P. Brown (*pro hac vice* forthcoming)
2200 Pennsylvania Avenue, NW
Washington, District of Columbia 20037
(202) 955-1500
brownj@hunton.com

*Counsel for Defendant*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................2

     A.    Plaintiff Agrees to Arbitrate Her Employment Disputes ..........................2

     B.    Plaintiff's Employment with Dotdash ......................................................3

     C.    The Parties' Pre-Lawsuit Discussions Regarding the Arbitration
          Agreement ..................................................................................................3

     D.    Plaintiff's Employment Claims against Dotdash ......................................4

     E.    Plaintiff Engages in a Negative Public Relations Campaign against
          Dotdash after Filing the Complaint...........................................................4

III.  ARGUMENT .........................................................................................................5

     A.    The Court Should Compel Arbitration of Plaintiff's Claims....................5

          1.     Plaintiff's Claims Are Covered by the Parties' Valid and Enforceable
                 Agreement to Arbitrate Her Employment Claims ...................................6

     B.    The Court Should Stay These Proceedings Pending Arbitration...............8

     C.    Plaintiff and Her Counsel Should Be Required to Reimburse Dotdash for
          the Costs and Fees It Has Incurred in Connection with this Motion ........8

IV.  CONCLUSION.....................................................................................................11

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                    **Page(s)**

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
  483 F. App'x 634 (2d Cir. 2012) .......................................................................10

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).........................................................................................5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986).........................................................................................5

*In re Auction Houses*,
  No. 00-cv-0648, 2004 WL 2624896 (S.D.N.Y. Nov. 18, 2004)...................................9

*Banus v. Citigroup Glob. Mkts., Inc.*,
  757 F. Supp. 2d 394 (S.D.N.Y. 2010)...................................................................10

*Bauer v. Yellen*,
  548 F.Supp. 2d 88 (S.D.N.Y. 2008).....................................................................11

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006)..........................................................................................5

*Chen-Oster v. Goldman, Sachs & Co.*,
  449 F. Supp. 3d 216 (S.D.N.Y. 2020)...................................................................7

*Ctr. Cadillac. Inc. v. Bank Leumi Tr. Co. of New York*,
  878 F. Supp. 626 (S.D.N.Y. 1995).......................................................................8

*Enmon v. Prospect Cap. Corp.*,
  675 F.3d 138 (2d Cir. 2012)...............................................................................8

*Faggiano v. CVS Pharmacy, Inc.*,
  283 F. Supp. 3d 33 (E.D.N.Y. 2017) ....................................................................7

*Gilbert v. Dell Techs., Inc.*,
  415 F. Supp. 3d 389 (S.D.N.Y. 2019)...................................................................8

*Gilbert v. Indeed, Inc.*,
  No. 20-CV-3826, 2021 WL 169111 (S.D.N.Y. Jan. 19, 2021) ...................................1

*Hines v. Overstock.com, Inc.*,
  380 F. App'x 22 (2d Cir. 2010) ...........................................................................6

*Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*,
  No. 87-cv-6369, 1991 WL 123962 (S.D.N.Y. July 3, 1991)......................................8

*JS Barkats, PLLC v. BE, Inc*,
  No. 12 CIV. 6779, 2013 WL 444919 (S.D.N.Y. Feb. 6, 2013) ................................................1

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015)......................................................................................................8

*Latif v. Morgan Stanley & Co. LLC*,
  No. 18-cv-11528, 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ......................................7, 10

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)....................................................................................................5, 6

*Molina v. Kaleo, Inc.*,
  363 F. Supp. 3d 344 (S.D.N.Y. 2019)......................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)......................................................................................................................5

*MQDC, Inc. v. Steadfast Ins. Co.*,
  No. 12-CV-1424, 2013 WL 6388624 (E.D.N.Y. Dec. 6, 2013) ...............................................1

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*,
  88 F.3d 129 (2d Cir. 1996)....................................................................................................6, 7

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)......................................................................................................6

*Novik & Co. v. Jerry Mann, Inc.*,
  497 F. Supp. 447 (S.D.N.Y. 1980)..........................................................................................11

*Sands Bros. & Co., Ltd. v. Nasser*,
  No. 03-cv-8128, 2004 WL 26550 (S.D.N.Y. Jan. 5, 2004) ......................................................8

*Shasgus v. Janssen, L.P.*,
  No. 08-cv-180A, 2009 WL 935809 (W.D.N.Y. Apr. 3, 2009)................................................11

*Tarulli v. Cir. City Stores, Inc.*,
  333 F. Supp. 2d 151 (S.D.N.Y. 2004)......................................................................................6

*White v. WeWork Companies, Inc.*,
  No. 20-cv-1800, 2020 WL 3099969 (S.D.N.Y. June 11, 2020) .........................................7, 10

**Statutes**

9 U.S.C. §§ 2-4 ...............................................................................................................1, 5, 8

28 U.S.C. § 1927 ...............................................................................................................8-10

N.Y. C.P.L.R. § 7515.............................................................................................................10

**Other Authorities**

Federal Rules of Civil Procedure Rule 12 ......................................................................................1

JAMS Employment Arbitration Rules and Procedures Rule 26....................................................10

## I.    **INTRODUCTION**

Defendant About, Inc. d/b/a Dotdash ("Dotdash") respectfully moves this Court for an Order, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4, (i) compelling Plaintiff Jackelyn Keller to arbitrate her claims pursuant to the parties' arbitration agreement and (ii) staying this action.[1]

We note at the outset that Plaintiff's allegations of wrongdoing are untethered to reality. Plaintiff was a highly-compensated employee who received several promotions and significant increases in pay and responsibility during her tenure at Dotdash.  Her inflammatory allegations that Dotdash has a "misogynistic" culture and does not value the role of women and working mothers are belied not only by her own experience, but by Dotdash's proven track record in creating a diverse and equitable workplace through focused programs to advance women's careers and support working parents.  Dotdash thus looks forward to exposing Plaintiff's allegations as falsehoods—in the forum contractually agreed to by the parties.

In pre-Complaint discussions regarding Plaintiff's employment claims, Dotdash reminded Plaintiff and her counsel about the binding arbitration agreement that the parties entered into in 2016.  Under this agreement—which Plaintiff affirmatively agreed to and which was an express condition of her employment with Dotdash—the parties agreed to arbitrate "all claims [and] disputes . . . arising out of [Plaintiff's] employment relationship" with Dotdash, with limited exceptions not applicable here.

---

[1] Dotdash is filing this Motion in lieu of filing an answer. *JS Barkats, PLLC v. BE, Inc.*, No. 12 CIV. 6779, 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) (granting defendant's motion to compel arbitration and staying case and stating that "the Court notes that parties are permitted to file motions to stay in lieu of an answer or other dispositive motions"); *MQDC, Inc. v. Steadfast Ins. Co.*, No. 12-CV-1424, 2013 WL 6388624, at *6 (E.D.N.Y. Dec. 6, 2013) (granting motion to compel arbitration and staying case and stating that "[i]n lieu of answering, Steadfast has filed the instant motion to compel arbitration and to stay this litigation."); *see also Gilbert v. Indeed, Inc.*, No. 20-CV-3826, 2021 WL 169111, at *7–8 (S.D.N.Y. Jan. 19, 2021) (analyzing a motion to dismiss and compel arbitration as a motion under Rule 12(b)).

Rather than comply with her contractual obligation to arbitrate her employment claims, Plaintiff filed her Complaint in this Court. The ensuing negative public relations blitz by Plaintiff's counsel makes her motivation for ignoring her obligation to arbitrate clear—she seeks to gain tactical leverage over Dotdash by using a public filing to litigate in the press.

But the proper forum is dictated not by Plaintiff's public relations strategy, but by the terms of the parties' contract. Each of Plaintiff's claims unquestionably arises out of her employment with Dotdash, and thus the parties' agreement clearly requires that those claims be resolved in arbitration. Dotdash therefore requests that the Court compel Plaintiff to arbitration and stay all proceedings before this Court. Moreover, because it is plain that this case was filed in a baseless, bad faith attempt to circumvent a clearly binding contractual obligation to arbitrate, Dotdash requests that the Court award the reasonable attorneys' fees and costs Dotdash has incurred in bringing this Motion.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Agrees to Arbitrate Her Employment Disputes

On February 17, 2016, Plaintiff signed an employment agreement with Dotdash. Declaration of Colleen Gangl ("Gangl Dec.") ¶ 5, Ex. A. This employment agreement— accepted and agreed to by Plaintiff—contained, as an express condition of Plaintiff's employment with Dotdash, an agreement to arbitrate certain claims, (hereafter, the "Arbitration Agreement"), including those related to Plaintiff's employment with the company.

Specifically, the Arbitration Agreement states, in relevant part:

> Your employment will be subject to the laws of the State of New York and the United States. You and the Company agree that, except for disputes relating to or arising out of the obligations set forth in About.com's Confidential Information and Invention Assignment Agreement, ***all claims, disputes or controversies arising out of, concerning, or relating to your employment relationship***, including claims concerning wages or compensation, benefits or other terms and conditions of employment, or any other claims whether arising by statute or otherwise, ***shall be***

> ***fully and finally resolved by mandatory, binding arbitration*** conducted by JAMS at its Dispute Resolution Center located in the vicinity of your employment location for About.com pursuant to JAMS's then-current Employment Arbitration Rules and Procedures. ***Your agreement to arbitrate applies to all employment-related claims***, Including, but not limited to, claims arising under the Fair Labor Standards Acts, Title VII of the Civil Rights Act as amended, the Equal Pay Act, the Pregnancy Discrimination Act, the Americans With Disabilities Act, the Age Discrimination In Employment Act, the New York Labor Law, the New York Human Rights Law, the New York City Administrative Code, or any other federal, state or local employment or discrimination laws, rules, regulations, ordinances, including wage and hour laws, or any common law claims . . .

*Id.* (emphases added).  Each of Plaintiff's claims is covered by the Arbitration Agreement, which survives after Plaintiff's resignation of her employment with Dotdash.

## B.   <u>Plaintiff's Employment with Dotdash</u>

After signing Dotdash's offer letter, which included the Arbitration Agreement, Plaintiff began her employment with Dotdash on or about March 14, 2016.  Gangl Dec. ¶ 6.  Plaintiff worked for Dotdash, most recently as a Vice President, Revenue Strategy, until she voluntarily resigned on April 14, 2020.  *Id.*

## C.   <u>The Parties' Pre-Lawsuit Discussions Regarding the Arbitration Agreement</u>

Prior to Plaintiff filing her lawsuit in this Court, the parties, through counsel, discussed the Arbitration Agreement.  Brown Dec. ¶ 5, Ex. D.  Plaintiff provided Dotdash with a draft complaint on December 31, 2020.  *Id.*  The draft complaint included a caption reflecting Plaintiff's intent to file the action in this Court.  As such a filing would contravene the parties' Arbitration Agreement, on January 6, 2020 Dotdash provided Plaintiff with another copy of the Arbitration Agreement and demanded that she initiate her dispute through JAMS as required by the parties' contract.  *Id.*  Dotdash further stated that it would seek its costs and fees if Plaintiff ignored the parties' contractual obligations and instead filed her lawsuit in federal court.  *Id.*

**D.**   **Plaintiff's Employment Claims against Dotdash**

Despite being fully aware of the parties' binding Arbitration Agreement, Plaintiff filed

her Complaint in this Court on January 11, 2020.  *See* ECF No. 1 (the "Complaint").  The

Complaint alleges that Dotdash discriminated and retaliated against Plaintiff due to her sex,

pregnancy, and religion, in violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq.

("FMLA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII");

the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); New York State Human Rights

Law, N.Y. Executive Law § 290 et seq. ("NYSHRL"); New York City Human Rights Law,

N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); Equal Pay Act, 29 U.S.C. § 206 et seq.

("EPA") and New York State Pay Equity Law, N.Y. Lab. Law § 194 et seq. ("NYSPEL").

**E.**   **Plaintiff Engages in a Negative Public Relations Campaign against Dotdash after Filing the Complaint**

Immediately after filing her lawsuit, Plaintiff's counsel launched a public relations

campaign with the apparent goal of gaining leverage over Dotdash in connection with this action.

This campaign included several inflammatory (and false) statements to the media, including:

- Regarding Dotdash, "[i]t is disappointing that women are still fighting to overcome the myth that choosing to raise a family somehow makes them less dedicated to their jobs" (Gangl Dec., ¶ 7, Ex. B);

- "Such an antiquated way of thinking has no place in today's workplace, and we look forward to holding Dotdash accountable for what we believe is overt discrimination against Ms. Keller on the basis of her gender and pregnancy" (*Id*.);

- That Dotdash has a "bro culture" and engaged in the "misogynistic treatment of women []as part of the company's culture," that "men would speak over their female peers, engage in 'mansplaining,' roll their eyes when women spoke, tell women to be quiet, belittle female professionals as 'girls' and ask them to take notes at meetings;" that Dotdash sidelined Plaintiff after learning she was pregnant; that she was demoted and had her compensation reduced; among others (*Id*.).

Plaintiff's counsel also published social media posts announcing the filing of the Complaint.  *Id*.

4

To be sure, all of the above statements made by Plaintiff's counsel to the press are—like Plaintiff's claims—false, and Dotdash looks forward to proving as much in due course and in the proper forum.

## III.   ARGUMENT

### A.   The Court Should Compel Arbitration of Plaintiff's Claims

Arbitration is a matter of contract and absent contractual delegation to the contrary, "the question of whether the parties agreed to arbitrate"—arbitrability—"is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The FAA, which "reflects a liberal federal policy favoring arbitration agreements," (*Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citation omitted)) dictates that any contract containing a binding arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When courts interpret the scope of an arbitration provision, they must apply "a presumption of arbitrability." *AT&T Techs., Inc.*, 475 U.S. at 650 (internal quotation marks and citation omitted). The presumption reflects the purpose of the FAA, which is to enact "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Therefore, any doubts regarding arbitrability "should be resolved in favor of arbitration." *Id.* at 25; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-346 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,'") (alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

When a court is deciding whether a dispute should be arbitrated, it must answer two questions:  (1) whether there is a valid agreement to arbitrate and, if so, (2) whether the subject of the dispute is within the scope of the arbitration agreement.  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996).  Whether an arbitration agreement exists is a matter of state contract law.  *Meyer*, 868 F.3d at 73-74.  The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration agreement, although "[t]his burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed."  *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original).  The court applies a "standard similar to that applicable for a motion for summary judgment" when deciding a motion to compel arbitration.  *Meyer*, 868 F.3d at 74 (internal quotation marks and citation omitted).  If the Court determines that the parties have agreed in writing to arbitration, then the Court will stay the proceedings.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

### 1. Plaintiff's Claims Are Covered by the Parties' Valid and Enforceable Agreement to Arbitrate Her Employment Claims

*First*, the parties entered into a valid arbitration agreement.  As detailed *supra* at Section II.A., at the commencement of—and as an express condition of—Plaintiff's employment with Dotdash, the parties entered into a valid and enforceable agreement to arbitrate any claims related to Plaintiff's employment.  Gangl Dec ¶ 5, Ex. A; *see also Tarulli v. Cir. City Stores, Inc.*, 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where "[t]he Plaintiff voluntarily signed the [arbitration] Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration").

*Second*, the Arbitration Agreement clearly applies to the claims that Plaintiff asserts against Dotdash in her Complaint.  Specifically, pursuant to the Arbitration Agreement, Plaintiff and Dotdash agreed that:

> [A]ll claims, disputes or controversies arising out of, concerning, or relating to [Plaintiff's] employment relationship, including claims concerning wages or compensation, benefits or other terms and conditions of employment, or any other claims whether arising by statute or otherwise, shall be fully and finally resolved by mandatory, binding arbitration . . . .

Ex. A.

The instant allegations—that Dotdash purportedly discriminated and retaliated against Plaintiff due to her sex, pregnancy, and/or religion, and family and medical leave interference and retaliation—clearly "arise out of" Plaintiff's employment with Dotdash and are thus within the scope of the arbitration agreement.  *Nat'l Union Fire Ins. Co. of Pittsburgh*, *supra*, 88 F.3d at 135.  Courts routinely send these types of employment cases to arbitration.  *See, e.g.*, *Latif v. Morgan Stanley & Co. LLC*, No. 18-cv-11528, 2019 WL 2610985, at *4 (S.D.N.Y. June 26, 2019) (granting defendant's motion to compel plaintiff's sex discrimination, retaliation, and hostile work environment claims to arbitration); *White v. WeWork Companies, Inc.*, No. 20-cv-1800, 2020 WL 3099969, at *7 (S.D.N.Y. June 11, 2020) (granting defendant's motion to compel plaintiff's race and gender discrimination, retaliation, and equal pay violation claims to arbitration); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 274 (S.D.N.Y. 2020) (granting defendant's motion to compel class members' sex discrimination claims to arbitration); *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 352 (S.D.N.Y. 2019) (granting defendant's motion to compel plaintiff's religious discrimination and retaliation claims to arbitration); *Faggiano v. CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 38 (E.D.N.Y. 2017) (granting defendant's motion to compel plaintiff's age discrimination claims to arbitration).

Therefore, because (1) there is a valid agreement to arbitrate, and (2) the subject of the dispute is within the scope of the Arbitration Agreement, Plaintiff's claims should be compelled to arbitration.

**B.      The Court Should Stay These Proceedings Pending Arbitration**

As all of Plaintiff's claims are covered by the parties' Arbitration Agreement and should be compelled to arbitration, the Court should stay these proceedings pending arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (Section 3 of the FAA mandates that a court issue a stay of proceedings when "all of the claims in an action have been referred to arbitration and a stay is requested"); *Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 401 (S.D.N.Y. 2019) (granting motion to compel discrimination claims to arbitration and staying case).

**C.      Plaintiff and Her Counsel Should Be Required to Reimburse Dotdash for the Costs and Fees It Has Incurred in Connection with this Motion**

A court may, pursuant to its inherent equitable powers, award attorneys' fees "where the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.*, No. 87-cv-6369, 1991 WL 123962, at *5 (S.D.N.Y. July 3, 1991) (quotation and citation omitted); *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) ("The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is similar to that necessary to invoke the court's inherent power.") (quotation and citation omitted).  In the arbitration context, attorneys' fees are warranted "where the party refusing arbitration acted without justification or did not have a reasonable chance to prevail." *Sands Bros. & Co., Ltd. v. Nasser*, No. 03-cv-8128, 2004 WL 26550, at *3 (S.D.N.Y. Jan. 5, 2004) (quotation and citation omitted) (awarding fees where party could not have reasonably expected to prevail in its efforts to resist arbitration).  Moreover, in determining whether a party has acted in bad faith, the court can consider "the manner in which the action was brought and

the manner in which it was litigated" and whether "the opposing party's actions were taken to harass, delay the proceedings, or for otherwise inappropriate reasons." *Ctr. Cadillac. Inc. v. Bank Leumi Tr. Co. of New York*, 878 F. Supp. 626, 628 (S.D.N.Y. 1995).

Beyond the Court's inherent power, under 28 U.S.C. Section 1927, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "An award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *In re Auction Houses*, No. 00-cv-0648, 2004 WL 2624896, at *4 (S.D.N.Y. Nov. 18, 2004) (internal quotation and citation omitted). An award under this section "must be supported by a finding of bad faith . . . which can be established if the attorney engaged in objectively unreasonable conduct." *Id*. (internal quotation and citation omitted).

Plaintiff and her counsel's decision to ignore the parties' binding agreement to arbitrate this dispute was both intentional and in bad faith. Indeed, prior to the filing of the instant lawsuit Dotdash notified Plaintiff of the applicability of the Arbitration Agreement, and its intention to seek fees if Plaintiff chose to ignore her contractual agreement to arbitrate this dispute. Despite being fully aware of her contractual obligations, Plaintiff nonetheless filed her Complaint in this Court and simultaneously launched a negative and misleading public relations campaign aimed at promoting her baseless allegations. Plaintiff's decision to disregard the parties' contract in favor of litigating in federal court appears to be motivated solely by her apparent belief that increased publicity surrounding this action will provide Plaintiff with some sort of strategic

advantage over Dotdash in the lawsuit.[2]  Dotdash was compelled to file the instant motion in order to enforce the parties' clear and binding contract.

Plaintiff's decision to ignore the binding Arbitration Agreement was in bad faith; she has no legitimate basis upon which to challenge the Arbitration Agreement.[3]  Accordingly, this Court should, under its inherent authority (for both Plaintiff and her counsel) and pursuant to Section 1927 (for Plaintiff's counsel only) order Plaintiff and her counsel, jointly and severally, to reimburse Dotdash for the costs and attorneys' fees incurred in bringing this motion.  *See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 483 F. App'x 634, 635-36 (2d Cir. 2012) (affirming district court's award of attorneys' fees and stating "we agree with the district court that the federal policy of enforcing sophisticated parties' arbitration agreements weighs in favor of fee awards against parties who attempt, without legitimate legal basis, to circumvent arbitration."); *see also Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394, 402-03 (S.D.N.Y. 2010) (granting award of attorneys' fees where "[attorney] filed this action for the improper purpose of delaying pending arbitration proceedings . . . [he] pursued claims that either should have been decided in arbitration, as the plaintiffs' contracts specified, or were completely without merit. The arguments were so baseless that the Court can conclude only that they were made in bad

---

[2] Plaintiff's attempt to use the publicly filed lawsuit to disparage Dotdash also runs contrary to the parties' agreement to arbitrate Plaintiff's claims pursuant to the JAMS Employment Arbitration Rules and Procedures, and appears designed to circumvent the privacy and confidentiality provisions built into that arbitration process.  *See, e.g.*, Brown Dec. ¶ 4, Ex. C, Rule 26(a) ("JAMS and the Arbitrator ***shall maintain the confidential nature of the Arbitration proceeding*** and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision." (emphasis added)).

[3] Plaintiff's counsel indicated an intention to rely upon New York Civil Practice Law and Rules Section 7515 (hereafter, "Section 7515") to resist arbitration in the parties' pre-lawsuit communications.  Brown Dec. ¶ 5, Ex. D.  However, Section 7515 is inapplicable for two reasons.  *First*, Section 7515, which was enacted on July 11, 2018 and re-enacted on October 11, 2019, is not retroactive and thus does not apply to the parties' 2016 Arbitration Agreement.  See N.Y. C.P.L.R. § 7515(b)(1) ("Except where inconsistent with federal law, no written contract, entered into on or after the effective date of this section shall contain a prohibited [arbitration] clause") (emphasis added).  *Second*, Section 7515 cannot be relied upon here as it is preempted by the FAA.  *See Latif*, *supra*, 2019 WL 2610985, at *3; *White*, *supra*, 2020 WL 3099969, at *5.  For these reasons, Plaintiff cannot rely on Section 7515 to invalidate the Arbitration Agreement.

faith."); *Novik & Co. v. Jerry Mann, Inc.*, 497 F. Supp. 447, 450 (S.D.N.Y. 1980) (awarding fees based on "unnecessary and unjustifiable persistence with . . . oppos[ing] arbitration").

Should the Court grant Dotdash's request, Dotdash will promptly file a fee application detailing its costs and fees. *See Shasgus v. Janssen, L.P.*, No. 08-cv-180A, 2009 WL 935809, at *2 (W.D.N.Y. Apr. 3, 2009) (granting defendant's motion for fees and ordering defendant to submit an application for the recovery of fees); *Bauer v. Yellen*, 548 F.Supp. 2d 88, 96 (S.D.N.Y. 2008) (granting defendant's motion for fees and instructing defendant to submit fee application within twenty days.).

## IV.    **CONCLUSION**

For all of the reasons set forth above, Dotdash respectfully requests that the Court compel Plaintiff to arbitration, stay the case before this Court, and grant Dotdash its costs and fees incurred in bringing this motion.

Dated:  February 2, 2021                Respectfully Submitted,

                                        HUNTON ANDREWS KURTH LLP

                                        By: */s/ Robert T. Quackenboss*
                                                Robert T. Quackenboss
                                                Sima Kazmir
                                                200 Park Avenue
                                                New York, New York 10166
                                                (212) 309-1000
                                                rquackenboss@hunton.com
                                                skazmir@hunton.com

                                                Jason P. Brown (*pro hac vice* forthcoming)
                                                2200 Pennsylvania Avenue, NW
                                                Washington, District of Columbia 20037
                                                (202) 955-1500
                                                brownj@hunton.com

                                                *Counsel for Defendant*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 2, 2021 I filed a true and correct copy of the foregoing document via the Court's electronic-filing system, which will send electronic notification of such filing to all counsel-of-record in this action.

*/s/ Robert T. Quackenboss*
Robert T. Quackenboss

1