**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

JACKELYN KELLER,                                        :
                                                       :    Civil Action No.: 21-cv-00228
                                   Plaintiff,           :    (JMF)(OTW)
                                                       :
                v.                                      :
                                                       :
ABOUT, INC. d/b/a DOTDASH,                              :
                                                       :
                                   Defendant.           :
-------------------------------------------------------------X

**PLAINTIFF JACKELYN KELLER'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT DOTDASH'S MOTION TO COMPEL ARBITRATION
<u>AND STAY THIS ACTION</u>**

**WIGDOR LLP**

Valdi Licul

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com

*Counsel for Plaintiff*

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT .........................................................................................1

FACTS ...............................................................................................................................1

I.      BACKGROUND ....................................................................................................1

II.     DOTDASH'S ARBITRATION REQUIREMENTS .............................................2

III.    DOTDASH INSISTS THAT KELLER WAIVER HER RIGHTS AND THREATENS
        KELLER ................................................................................................................3

ARGUMENT .....................................................................................................................4

I.      DOTDASH'S ARBITRATION PROVISION IS UNCONSCIONABLE .........................4

        A.      Substantive Unconscionability...............................................................6

                1.      The Limitations Periods ................................................................6

                2.      The Fee-Shifting Provision .........................................................9

                3.      Unequal Applicability................................................................10

        B.      Procedural Unconscionability................................................................11

        C.      Waiver and Severability.........................................................................12

II.     THERE IS NO AVAILABLE ARBITRABLE FORUM .................................14

III.    DOTDASH'S BASELESS REQUEST FOR SANCTIONS ............................16

CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

## Cases

American Exp. Co. v. Italian Colors Restaurant,
   570 U.S. 228 (2013) ............................................................................................ 8

American Family Life Assurance Co. of N.Y. v. Baker,
   778 Fed App'x 24 (2d Cir. 2019) ....................................................................... 5

American Family Life Assurance Co. of New York v. Baker,
   No. 17 Civ. 7054 (LDH)(RLM), 2020 WL 1536317 (E.D.N.Y. Mar. 31, 2020) ..................... 13

Bell v. Cendant Corp.,
   293 F.3d 563 (2d Cir. 2002) ............................................................................... 5

Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,
   346 F.3d 360 (2d Cir. 2003) ............................................................................... 5

Castellanos v. Raymours Furniture Co., Inc.,
   291 F. Supp. 3d 294 (E.D.N.Y. 2018) ........................................................... 7, 8

Chen-Oster v. Goldman, Sachs & Co.,
   449 F. Supp. 3d 216 (S.D.N.Y. 2020) ............................................................. 12

Christiansburg Garment Co. v. EEOC,
   434 U.S. 412 (1978) ............................................................................... 9, 12, 16

Chung Chang v. Warner Bros. Entertainment, Inc.,
   No. 19 Civ. 2091 (LAP), 2019 WL 5304144 (S.D.N.Y. Oct. 21, 2019) ................................ 10

Contec Corp. v. Remote Solution Co., Ltd.,
   398 F.3d 205 (2d Cir. 2005) ............................................................................... 5

Dallas Aerospace, inc. v. CIS Air Crop.,
   352 F.3d 775 (2d Cir, 2003) ............................................................................. 12

DeGaetano v. Smith Barney, Inc.,
   983 F.Supp. 459 (S.D.N.Y. 1997) ...................................................................... 9

Espinosa v. SNAP Logistics Corp.,
   No. 17 Civ. 6383 (AT), 2018 WL 9563311 (S.D.N.Y. Apr. 3, 2018) ................................. 9, 13

Falberg v. Goldman Sachs Group, Inc.,
   No. 19 Civ. 9910 (ER), 2020 WL 7695711 ...................................................... 7

Friedmann v. Raymour Furniture Co., Inc.,
    No. 12 Civ. 1307 (LDW)(AKT), 2012 WL 4976124 (E.D.N.Y. Oct. 16, 2012)......................7

Gilbert v. Indeed, Inc.,
    No. 20 Civ. 3826 (LJL), 2021 WL 169111 (S.D.N.Y. Jan. 19, 2021) ...............................13, 16

Gillman v. Chase Mahnattan Bank, N.A.,
    73 N.Y.2d 1 (1988) ....................................................................................................5, 6

Gruber v. Louis Hornick & Co., Inc.,
    No. 02 Civ. 5092 (SHS), 2003 WL 21222541 (S.D.N.Y. May 23, 2003) ................................9

Hackler v. R.T. Moore Co.,
    No. 2:17-cv-262-FtM-29MRM, 2017 WL 6535856 (M.D. Fla. Dec. 21. 2017) .......................8

In re Salomon Inc. Shareholders' Derivative Litigation 91 Civ. 5500 (RRP),
    68 F.3d 554 (2d Cir. 1995)...........................................................................................14, 15

Isaacs v. OCE Bus. Servs., Inc.,
    968 F. Supp. 2d 564 (S.D.N.Y. 2013) ...........................................................................10, 12

LeBlanc–Sternberg v. Fletcher,
    143 F.3d 765 (2d Cir.1998).................................................................................................16

Mandel v. Liebman,
    303 N.Y. 88 (1951) ..............................................................................................................5

Mason v. Am Trust Fin. Servs., Inc.,
    No. 19 Civ. 8346 (DLC), 2020 WL 6365448 (S.D.N.Y. Oct. 29, 2020) ..................................9

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) .............................................................................................................6

Moss v. First Premier Bank,
    835 F.3d 260 (2d Cir. 2016)................................................................................................15

Oneida Indian Nation of New York v. County of Oneida,
    617 F.3d 114 (2d Cir. 2010)...........................................................................................14, 15

Parisi v. Goldman, Sachs & Co.,
    710 F.3d 483 (2d Cir. 2013).................................................................................................15

Ragone v. Atlantic Video at Manhattan Ctr.,
    595 F.3d 115 (2d Cir. 2010).......................................................................................... passim

Ravina v. Columbia Univ.,
    No. 16 Civ. 2137 (RA), 2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020)...................................... 12

Sablosky v. Edward S. Gordon Co.,
    73 N.Y.3d 133 (1989) ............................................................................................................... 5

Salzano v. Lace Entertainment Inc.,
    No. 13 Civ. 5600 (LGS), 2014 WL 3583195 (S.D.N.Y. July 18, 2014)............................ 13, 14

State v. Wolowitz,
    96 A.D.2d 47 (2d Dep't 1983) ................................................................................................. 5

Suqin Zhu v. Hakkasan NYC LLC,
    291 F. Supp. 3d 378 (S.D.N.Y. 2017)................................................................................. 11, 14

Telenor Mobile Commc'ns AS v. Storm LLC,
    584 F.3d 396 (2d Cir. 2009) ..................................................................................................... 5

Thompson v. Body Sculpt Int'l, LLC,
    No. 18 Civ. 1001 (ARR)(GRB), 2018 WL 3235545 (E.D.N.Y. July 2, 2018).................. 10, 13

Van-Go Transport Co., Inc. v. New York City Bd. of Educ.,
    53 F. Supp. 2d 278 (E.D.N.Y. 1999)......................................................................................... 7

Vega v. Federal Exp. Corp.,
    No. 09 Civ. 07637 (RJH)(CWG), 2011 WL 4494751 ............................................................. 7

Zambrano v. Strategic Delivery Sols., LLC,
    15 Civ. 8410 (ER), 2016 WL 5339552 (S.D.N.Y. Sep. 22, 2016)...................................... 10, 14

**Statutes**

29 U.S.C. § 206 .............................................................................................................................. 1

29 U.S.C. § 206(d)(3) ..................................................................................................................... 7

29 U.S.C. § 255 .............................................................................................................................. 7

29 U.S.C. §§ 2601 .......................................................................................................................... 1

42 U.S.C. § 1915 ............................................................................................................................ 12

42 U.S.C. § 1981 ............................................................................................................................. 1

42 U.S.C. §§ 2000e ........................................................................................................................ 1

N.Y.C. Admin. Code § 8-101 ................................................................................... 1

N.Y.C. Admin. Code § 8-502(d) ............................................................................. 9

N.Y. Executive Law § 290 ...................................................................................... 1

N.Y. Lab. Law § 194 ............................................................................................... 1

**<u>Rules</u>**

CPLR 201 ................................................................................................................ 9

N.Y. C.P.L.R. § 214(2) .......................................................................................... 9

Plaintiff Jackelyn Keller ("Keller" or "Plaintiff") submits this memorandum of law in opposition to Defendant About, Inc. d/b/a DotDash's ("DotDash," the "Company," or "Defendant") motion to compel arbitration and stay this action.

## PRELIMINARY STATEMENT

Defendant About, Inc. d/b/a Dotdash has moved to compel arbitration of Plaintiff Jackelyn Keller's claims brought under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); New York State Human Rights Law, N.Y. Executive Law § 290 *et seq*. ("NYSHRL"); New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*.; Equal Pay Act, 29 U.S.C. § 206 *et seq*. ("EPA") and New York State Equity Law, N.Y. Lab. Law § 194 *et seq*. ("NYSPEL").  In addition, DotDash seeks reimbursement of attorneys' fees.  For the reasons stated here, the motion should be denied in its entirety.

## FACTS

### I.    BACKGROUND

In 2016, Keller, a highly successful advertising executive, joined DotDash, a digital publisher, as a Senior Director.  Over the next four years, Keller earned accolades for her extraordinary skills and performance.  Keller's colleagues described her as a "superstar," "the epitome of leadership" and "tremendously talented."  Unfortunately, Keller could not overcome the stigma of being a woman, a mother and taking pregnancy leave.

The Company's misogynistic culture – where women are told to be quiet and take notes at meetings and where the Company's CEO, Neil Vogel, is surprised that a female employee is "really smart, like guy smart" – blocked Keller's progress.  For example, DotDash demoted Keller after Keller announced that she was expecting her second child because, according to one

manager, it would be "impractical" for Keller to continue her existing job duties "given her upcoming mat[ernity] leave."  The Company also prevented Keller from taking on new responsibilities because she was then "seven months pregnant."  Throughout, DotDash paid Keller less than comparable men and women without children, ultimately forcing Keller out.

## II.    DOTDASH'S ARBITRATION REQUIREMENTS

At the time of Keller's hire, DotDash required Keller to sign an Employment Agreement (the "Agreement").  Section 4 of the Agreement stated that Keller was compelled to arbitrate all claims related to her employment before JAMS.  See Declaration of Colleen Gangl in Support of DotDash's Motion to Compel Arbitration and Stay this Action ("Gangl Decl."), Ex. A.  The Agreement did not provide an alternative forum to arbitrate disputes.  Id.

The Agreement misleadingly stated that the arbitrator "may award whatever remedies would be available to the parties in a court of law."  Id.  In fact, DotDash used the arbitration provision in the Agreement to strip Keller of important rights and remedies.  For example, DotDash required Keller to "waive[] . . . [her] right to seek attorneys' fees in a civil action."  Id.  Almost all the statutes enumerated in the Agreement contain fee-shifting provisions that would require DotDash to pay Keller's attorneys' fees if she prevailed.[1]  Nothing in the Agreement required a similar waiver by DotDash.  Similarly, DotDash stated that Keller – and only Keller – had to "agree than any claim, controversy or dispute must be submitted or raised within six (6) months of the time when the event or occurrence giving rise to the dispute arose or will be waived by you [Keller]."  Id.  Significantly, all the statutes referenced in the Agreement contain

---

[1]    The arbitration provision identified "the Fair Labor Standards Act, Title VII of the Civil Rights Act, as amended, the Equal Pay Act, the Pregnancy Discrimination Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York Labor Law, the New York Human Rights Law, the New York City Administrative Code, or any federal, state or local employment or discrimination laws, rules, regulations, ordinances, including wage and hour laws, or any common law claims."  Gangl Decl., Ex. A.

limitations periods that are longer than six months.[2]  Once again, nothing in the Agreement required DotDash to waive its right to bring claims against Keller within six months or risk waiver.

DotDash's arbitration provision also stripped Keller of significant rights under the JAMS forum rules.  DotDash incorporated into Keller's Agreement the JAMS Employment Arbitration Rules and Procedures (the "JAMS Rules"), which include the JAMS Employment Arbitration Minimum Standards (the "JAMS Minimum Standards").  See Declaration of Valdi Licul in Opposition to Defendant DotDash's Motion to Compel Arbitration and Stay this Action ("Licul Decl."), Ex. A.  Under these rules, "[a]ll remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, as well as statutes of limitations, must remain available in arbitration."  Id.  The "purpose" of this requirement "is to ensure that the remedies available in arbitrations and court proceedings are the same."  Id. JAMS will not accept a matter for arbitration that runs afoul of the JAMS Minimum Standards. See id.

## III.   DOTDASH INSISTS THAT KELLER WAIVE HER RIGHTS AND THREATENS KELLER

As explained in Keller's Complaint ("Complaint"), Keller was the victim of severe discrimination and retaliation throughout her employment at DotDash.  Nonetheless, Keller reached out through counsel in an attempt to end the unlawful conduct.  Complaint, at ¶ 72.  She also filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  Id., at ¶ 12.  Unfortunately, DotDash refused to fix the problems.  Rather, it launched

---

[2]     FLSA (two or three years): Title VII (300 days); EPA (two or three years); PDA (300 days); ADA (300 days); ADEA (300 days); NYLL (six years); NYSHRL (three years); NYCHRL (three years).

a self-serving investigation intended to whitewash its unlawful conduct.  Id., at ¶¶ 73-80.  The Company's unlawful conduct escalated, ultimately forcing Keller out.  Id., at ¶¶ 81-89.

On December 31, 2020, Keller gave notice through counsel that she intended to file a lawsuit in court.  See Declaration of Jason P. Brown in Support of DotDash's Motion to Compel Arbitration and Stay this Action ("Brown Decl."), Ex. D.  DotDash's response was swift and, predictably, menacing.  DotDash demanded that Keller bring her claims in arbitration and threatened sanctions if Keller did not agree.  Id.  Consistent with the law of this Circuit and the JAMS Minimum Standards, Keller informed DotDash that its arbitration provision was "unenforceable as it purports to shorten the applicable limitations period and unlawfully strips Ms. Keller of the fundamental right to an award of fees and costs as a prevailing party."  Id.  However, DotDash refused.  In an attempt to compromise, Keller asked that DotDash waive the unlawful provisions in the Agreement.  Id.  DotDash acquiesced, but only in part.  It agreed to waive the limitations on Keller's right to seek fees and costs "in exchange for Ms. Keller's agreement to submit this matter to arbitration."  Id.  It refused, however, to waive the unlawful provision "shortening . . . the limitations period."  Id.

## ARGUMENT

### I.    DOTDASH'S ARBITRATION PROVISION IS UNCONSIONABLE

"[A]n arbitration agreement may contain terms so onerous as to render it unconscionable."  Ragone v. Atlantic Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010).  "[Q]uestions concerning contractual validity relating to the unconscionability of [an] arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration."  Id.

(quoting Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003))

(bracket in original).[3]

In New York, a contract is unconscionable – and thus unenforceable – when it is "so

grossly unreasonable or unconscionable in the light of the mores and business practices of the

time and place as to be unenforceable according to its terms." Gillman v. Chase Mahnattan

Bank, N.A., 73 N.Y.2d 1, 10 (1988) (quoting Mandel v. Liebman, 303 N.Y. 88, 94 (1951)).  An

agreement may also be unconscionable where "one or more key terms are unreasonably

favorable to one party." American Family Life Assurance Co. of N.Y. v. Baker, 778 Fed App'x

24, 28 (2d Cir. 2019) (quoting Sablosky v. Edward S. Gordon Co., 73 N.Y.3d 133, 138 (1989)).

A contract can be procedurally or substantively unconscionable.  Ragone, 595 F.3d at 122.  "The

procedural element of unconscionability concerns the contract formation process and the alleged

lack of meaningful choice; the substantive element looks to the content of the contract."  Id.

(quoting State v. Wolowitz, 96 A.D.2d 47, 67 (2d Dep't 1983).  However, "[w]hile

determinations of unconscionability are ordinarily based on [a] conclusion that both the

procedural and substantive components are present, there have been exceptional cases where a

provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of

---

[3]      The threshold question of arbitrability is for a court, Telenor Mobile Commc'ns AS v.
Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009), unless there is "clear and unmistakable evidence
from the arbitration agreement . . .  that the parties intended that the question of arbitrability shall
be decided by the arbitrator."  Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 208 (2d
Cir. 2005) (quoting Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002)) (emphasis
omitted).  Here, there is no such "clear and unmistakable" evidence.  Quite the contrary, the
Agreement mandates that the court, not an arbitrator, determine the threshold issue of
arbitrability.  Gangl Decl., Ex. A ("Any lawsuit to enforce this arbitration clause shall be
commenced in, and you [Keller] submit and consent to the exclusive jurisdiction of, the state or
federal courts located in New York County, New York.").  In addition, the JAMS Minimum
Standards presumptively "defer" to a court to determine arbitrability where, as here, an employee
claims that the arbitration agreement does not meet minimum fairness requirements.  Licul Decl.,
Ex. A.

substantive unconscionability alone." Id. (quoting Gillman, 73 N.Y.2d at 12) (brackets in original).

In addition, and independent of state law, "a federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.'" Ragone, 595 F.3d at 125 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985)). Thus, "if certain terms of an arbitration agreement serve to act 'as a prospective waiver of a party's right to pursue statutory remedies . . . [courts] would have little hesitation in condemning the agreement as against public policy." Id. (quoting Mitsubishi, 473 U.S. at 637, n. 19).

### A.    Substantive Unconscionability

DotDash's arbitration provision is grossly substantively unconscionable, and therefore unenforceable, because it (1) shortens the limitations periods for Keller's claims in violation of applicable law and (2) interferes with Keller's ability to recover statutorily authorized damages.

### 1.    The Limitations Periods

DotDash's arbitration provision precludes Keller from asserting claims that are more than six months old, effectively stripping Keller of her right to pursue statutory remedies. Courts have routinely held that such right-stripping provisions are unlawful.

First, DotDash's attempt to limit Keller's ability to bring federal claims is unconscionable. "[I]n this Circuit, courts have found that '[i]f the parties to a contract intend for a provision to act as a bar to claims brought under federal law, they must specifically refer to such federal claims, and clearly express the intent to limit the period in which a party could bring

6

an action based on federal claims.'"  Falberg v. Goldman Sachs Group, Inc., No. 19 Civ. 9910

(ER), 2020 WL 7695711, at *3, n. 3 (S.D.N.Y. Dec. 28, 2020) (quoting Vega v. Federal Exp.

Corp., No. 09 Civ. 07637 (RJH)(CWG), 2011 WL 4494751, at *5, n. 4 (S.D.N.Y. Sept. 29,

2011)) (emphasis in original) (citing Van-Go Transport Co., Inc. v. New York City Bd. of Educ.,

53 F. Supp. 2d 278, 284 (E.D.N.Y. 1999)).  Here, the Agreement limits Keller's ability to bring

claims under four federal statutes (the FMLA, Title VII, Section 1981 and the EPA) without

providing the requisite notice.[4]

Second, DotDash's attempt to use arbitration to circumvent Keller's remedies under

equal pay laws is likewise unconscionable.  An employer's refusal to pay men and women equal

wages is a violation of the Fair Labor Standards Act ("FLSA").  29 U.S.C. § 206(d)(3) ("any

amounts owing to the employee which have been withheld in violation of this subsection

[Prohibition of Sex Discrimination] shall be deemed unpaid minimum wages or unpaid overtime

compensation").  Under the FLSA, an aggrieved employee may bring an equal pay claim within

"two years unless the violation is willful, in which case the limitations period is extended to three

years." Castellanos v. Raymours Furniture Co., Inc., 291 F. Supp. 3d 294, 300 (E.D.N.Y. 2018)

(citing 29 U.S.C. § 255).  Indeed, "federal courts have routinely concluded that arbitration

provisions shortening limitations period to bring FLSA claims are unenforceable" because,

among other things, "the damages a plaintiff can recover under the FLSA are tied to the statute's

---

[4]     The arbitration provision's general statement that Keller must submit or raise "any claim,
controversy or dispute" within six months makes no specific mention of such limitation on
federal claims.  See Friedmann v. Raymour Furniture Co., Inc., No. 12 Civ. 1307 (LDW)(AKT),
2012 WL 4976124, at *2 (E.D.N.Y. Oct. 16, 2012) (agreement stating that "any claim or lawsuit
relating to my service with Raymour & Flanigan Furniture must be filed no more than six (6)
months after the date of the employment action" insufficient to restrict employees claims under
the ADA and Age Discrimination in Employment Act ("ADEA")); Vega, 2011 WL 4494751, at
*1 (employee agreement "to bring  . . . within the time prescribed by law or 6 months from the
date of the event forming the basis of my lawsuit, whichever expires first," insufficient to limit
employee's claims under Title VII and the ADEA).

limitations period." Castellano, 291 F. Supp. 3d at 300 (E.D.N.Y. 2018).  Such unlawful

restrictions "interfere with substantive rights under the FLSA by precluding [the] plaintiff from

recovering what [s]he would potentially be able to recover would [s]he have brought h[er] claims

in the district court." Id. (quoting Hackler v. R.T. Moore Co., No. 2:17-cv-262-FtM-29MRM,

2017 WL 6535856, at *2 (M.D. Fla. Dec. 21. 2017)).  Moreover, such a provision runs afoul of

the "effective vindication doctrine" because it "operates as a 'prospective waiver of a right to

pursue statutory remedies." Id. at 301 (quoting American Exp. Co. v. Italian Colors Restaurant,

570 U.S. 228, 235-36 (2013)) (emphasis added).  As such, precluding Keller from vindicating

statutorily granted rights, such as the statute of limitations under the FLSA, renders the entire

agreement unenforceable.

The same reasoning applies to DotDash's attempt to use arbitration as a vehicle to restrict

Keller's ability to vindicate her rights under New York's equal pay law.  Like its federal

counterpart, the NYSEPL is part of a larger statutory scheme designed to protect employee

wages.  Consequently, the statute states that "[a]ll employees shall have the right to recover full

wages, benefits and wage supplements and liquidated damages accrued during the six years

previous to the commencing of such action." NYLL § 198(3).  DotDash's attempt to reduce the

applicable limitations period from six years to six months is, in fact, an effort to cut off Keller's

recovery and to preclude the effective vindication of her statutory rights.

Third, DotDash's attempt to use arbitration to limit Keller's rights under the NYCHRL

and the NYEPL is unconscionable because it contradicts various provisions of those statutes.

Each of the local statutes that DotDash violated includes its own specific limitations period.

Under the NYCHRL, Keller has three years to bring her discrimination and retaliation claims.

N.Y.C. Admin. Code § 8-502(d).  She has six years to bring claims for unequal pay under the

NYEPL.  NYLL § 198(3).  Neither of these statutes permits a shortening of the applicable

limitations period.  To the contrary, the NYEPL mandates a six-year limitations period

"[n]otwithstanding any other provision of law."  Id.[5]  As such, the Agreement runs in direct

contravention to the intended purpose of these statutes and deprives Keller of their provided

remedies.

        2.      <u>The Fee-Shifting Provision</u>[6]

The arbitration provision is also grossly unconscionable because it prevents Keller from

recovering attorneys' fees as the prevailing plaintiff.  <u>See</u> <u>Christiansburg Garment Co. v. EEOC</u>,

434 U.S. 412, 417 (1978) (prevailing plaintiff entitled to attorney's fees in the absence of

exceptional circumstances).  Courts in this Circuit have repeatedly found such efforts unlawful.

<u>See</u> <u>Gruber v. Louis Hornick & Co., Inc.</u>, No. 02 Civ. 5092 (SHS), 2003 WL 21222541, at *4

(S.D.N.Y. May 23, 2003) ("To the extent an arbitration agreement waives a plaintiff's right to

obtain attorney's fees, the agreement is invalid.");  <u>DeGaetano v. Smith Barney, Inc.</u>, 983

F.Supp. 459, 464-65 (S.D.N.Y. 1997) ("the Smith Barney Arbitration Policy – to the extent that

it prevents prevailing plaintiffs from obtaining an award of attorney's fees in employment

discrimination cases – is void as a matter of public policy"); <u>see also</u> <u>Espinosa v. SNAP</u>

<u>Logistics Corp.</u>, No. 17 Civ. 6383 (AT), 2018 WL 9563311, at *6 (S.D.N.Y. Apr. 3, 2018) ("To

---

[5]      To be sure, some courts have found that an employer may contractually restrict the
NYCHRL limitations periods pursuant to CPLR 201, which states that "[a]n action . . . must be
commenced within the time specified in this article unless a different time is prescribed by law or
a shorter time is prescribed by written agreement."  <u>Mason v. Am Trust Fin. Servs., Inc.</u>, No. 19
Civ. 8346 (DLC), 2020 WL 6365448, at *2 (S.D.N.Y. Oct. 29, 2020).  Keller's NYCHRL
claims, however, are not governed by CPLR 201.  Her claims are governed by the limitations
period set forth in the statute, which, as explained above, make no allowance for contractual time
restrictions.
[6]      DotDash conditionally agreed to waive the unlawful fee-shifting provision in exchange
for Keller's agreement to arbitrate her claims.  Brown Decl., Ex. D.  Keller did not agree and,
therefore, she assumes that DotDash will attempt to enforce the arbitration provision as written.

ensure that FLSA plaintiffs do not lose the ability to retain counsel when they agree to arbitration, a number of courts have held that plaintiffs cannot waive their right to attorneys' fees under the FLSA in an arbitration agreement."); <u>Zambrano v. Strategic Delivery Sols., LLC</u>, 15 Civ. 8410 (ER), 2016 WL 5339552, at *6 (S.D.N.Y. Sep. 22, 2016) ("The [c]ourt agrees with [p]laintiffs that the arbitration provision cannot preclude them from recovering their reasonable attorney's fees and costs should they prevail on their claims."). Undoubtedly, the unlawful fee-shifting provision serves as prospective waiver of rights.

3.    <u>Unequal Applicability</u>

In order to be enforceable, an employment-related arbitration agreement must be "equally applicable to both parties" and "not unreasonably favorable to the employer." <u>Thompson v. Body Sculpt Int'l, LLC</u>, No. 18 Civ. 1001 (ARR)(GRB), 2018 WL 3235545, at *6 (E.D.N.Y. July 2, 2018) (quoting <u>Isaacs v. OCE Bus. Servs., Inc.</u>, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013)). That is certainly not the case here. Under the terms of the arbitration provision DotDash drafted, only Keller is required to bring her claims within six months or risk waiver. Gangl Decl., Ex. A ("any claim, controversy or dispute must be submitted or raised within six (6) months of the time when the even or occurrence giving rise to the dispute arose or <u>will be waived by you [Keller]</u>" (emphasis added)). Thus, for example, a claim for breach of the Agreement would be subject to different rules depending on which party, DotDash or Keller, asserted claims. In arbitration, Keller would be barred from suing DotDash for a breach that occurred more than six months prior to filing. DotDash, however, would have the full six-year limitations period under New York law to assert that Keller breached the Agreement. <u>See Chung Chang v. Warner Bros. Entertainment, Inc.</u>, No. 19 Civ. 2091 (LAP), 2019 WL 5304144, at *4 (S.D.N.Y. Oct. 21, 2019) (holding that a "temporal limitation clause" was not substantively unconscionable because, inter

10

alia, it "bar[red] the parties from asserting claims <u>against each other</u> more than six months after

then end of Chang's employment" (emphasis added)).

Likewise, only Keller is required to waive her right to attorneys' fees.  Gangl Decl., Ex.

A ("You [Keller] understand and that agree <u>you are waiving your right</u> to . . . seek attorneys' fees

in a civil action") (emphasis added).  DotDash, on the other hand, operates under no such

limitation and may freely seek fees from Keller.

These provisions, which restrict Keller – and only Keller – from significant rights and

remedies, are facially unequal and overwhelmingly favorable to DotDash, rendering the arbitrate

provision unconscionable.  <u>See</u> <u>Suqin Zhu v. Hakkasan NYC LLC</u>, 291 F. Supp. 3d 378, 392

(S.D.N.Y. 2017) (refusing find a confidentiality provision in an arbitration agreement

unconscionable where "all of the terms of the [a]rbitration [a]greement – including those in the

confidentiality clause – apply equally to [p]laintiffs and [d]efendants").

### B.  <u>Procedural Unconscionability</u>

DotDash's arbitration provision is also procedurally unconscionable.  To induce an

employee into a false sense of security that arbitration will not diminish her rights, DotDash

promises "that the arbitrator in such action may award whatever remedies would be available to

the parties in a court of law."  Gangl Decl., Ex. A.  But this is merely window dressing.  In fact,

as this case makes clear, when a dispute arises, DotDash will ignore this provision, argue that

any claim that arose more than six months earlier is time-barred regardless of the statutory

limitations periods that would apply in court, and perhaps even insist that the employee give up

her entitlement to attorneys' fees and costs by consenting to arbitration.[7]  Moreover, the

---

[7]     This latter provision is particularly pernicious because it presents arbitration as
financially beneficial to the employee, as DotDash promises to "bear the administrative costs and
arbitrator fees." Gangl Decl., Ex. A.  However, DotDash does not disclose that there are no

employee must seek out the JAMS Rules (which DotDash does not include but only provides a link) and the related JAMS Minimum Standards (which DotDash fails to mention) to learn that DotDash's insistence that the employee waive her right to recover fees and agree to limit the applicable limitations period is wholly inappropriate.  Id.  Such an effort at "burying" important information and the "resulting potential for confusion" renders the arbitration provision "tainted by procedural unconscionability."  Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 249 (S.D.N.Y. 2020); see Isaacs, 968 F. Supp. 2d at 570 ("[a]n agreement is procedurally unconscionable when, among other considerations, the party seeking enforcement the agreement used 'deception'") (quoting Dallas Aerospace, inc. v. CIS Air Crop., 352 F.3d 775, 787 (2d Cir, 2003).[8]

## C.    Waiver and Severability

To be sure, a finding of unconscionability does not automatically void an arbitration agreement.  Nevertheless, in Ragone, the Second Circuit strongly indicated that an arbitration agreement that, like here, restricts the time an employee can bring claims and impedes an the employee's right to recover attorneys' fees would be so substantively unconscionable as to render it unenforceable.  595 F. 3d at 125.  The Court did not, however, reach the issue because the employer agreed to waive the offending provisions.  Furthermore, the Court sounded a "A Note of Caution" and warned that "[h]ad the defendants attempted to enforce the arbitration

---

administrative costs in court, except for a filing fee that can be waived.  42 U.S.C. § 1915. Moreover, because all of the employment statutes under which an employee is likely to bring claims contain fee-shifting provisions that unilaterally benefit the employee (not DotDash), Christiansburg, 434 U.S. at 417, the agreement to arbitrate provides an extraordinary benefit to DotDash even if the employee proves her claims.  See Ravina v. Columbia Univ., No. 16 Civ. 2137 (RA), 2020 WL 1080780, at *16 (S.D.N.Y. Mar. 6, 2020) (awarding $1,336,861.23 in fees and $222,390.08 in costs to sex discrimination plaintiff who only partially prevailed on her claims).

[8]     To be clear, given that DotDash's arbitration provision is grossly substantively unconscionably, Keller need not also make a showing of procedural unconscionability.

agreement as originally written it is not clear that we would hold in their favor." Id.  The Court reiterated that "had the defendants not waived enforcement, it is at least possible that [the employee] would be able to demonstrate that these provisions were incompatible with her ability to pursue her Title VII claims in arbitration, and therefore void under the FAA." Id. at 126.

Following Ragone, employers have been routinely saved by their decision to unconditionally waive unlawful provisions in arbitration agreements in order to avoid a finding of substantive unconscionability.  See Gilbert v. Indeed, Inc., No. 20 Civ. 3826 (LJL), 2021 WL 169111, at *21 (S.D.N.Y. Jan. 19, 2021) (refusing to void an arbitration agreement that restricted employee's fee-shifting rights because "[d]efendants have waived [the offending] provision"); American Family Life Assurance Co. of New York v. Baker, No. 17 Civ. 7054 (LDH)(RLM), 2020 WL 1536317, at *2 (E.D.N.Y. Mar. 31, 2020) (enforcing an arbitration provision with a "a 90-day limit on time to file any demand for arbitration and a fee-shifting provision" because the employer's "wavier of unconscionable terms cures any potential defect in the enforceability of an arbitration agreement"); Thompson, 2018 WL 3235545, at *6 (E.D.N.Y. July 2, 2018) (enforcing an arbitration agreement where the employer was "willing to waive all four of the[] [contested] provisions," including a provision that "shortens the statue of limitations for FLSA claims to one year"); Salzano v. Lace Entertainment Inc., No. 13 Civ. 5600 (LGS), 2014 WL 3583195, at *4 (S.D.N.Y. July 18, 2014) (finding an arbitration clause enforceable because "the [d]efendants waived the only provision in the arbitration agreement that might otherwise have made the arbitration provision unconscionable – the contractually created six-months limitations period and the fee-shifting provision.").

In other instances, employers were able to avoid a finding of substantive unconscionability because the operative agreement included a severability clause. See Espinosa,

2018 WL 9563311, at *6 (finding a waiver of "punitive damages and equitable relief to be unenforceable" but compelling arbitration where the operative agreement provided that any unenforceable clause "shall not prejudice the enforceability of any other provision or portion of the same provision"); Suqin Zhu, 291 F. Supp. 3d at 392 (pointing out that the challenged agreement "contains a severability and a saving clause"); Salzano, 2014 WL 3583195, at *4 ("the [c]ontract contains a severability clause that allows the arbitrator to strike 'any portion of [the] contract [that] is unenforceable'"); Zambrano, 2016 WL 5339552, at *6 (S.D.N.Y. Sept. 22, 2016) (finding that "the arbitration provision cannot preclude [plaintiffs] from recovering their reasonably attorney's fees and costs should they prevail on their claims" but finding that the operative agreement "contains a severability clause that permits striking any portion that is 'invalid, illegal or unenforceable'").

Here, unlike the above cases, DotDash has refused to waive both of the unconscionable provisions. Moreover, DotDash's agreement with Keller does not include a severability provision. Accordingly, rather than sever the offending provisions, this Court should apply the "traditional remedy for a claim of unconscionability," which "is to deny enforcement of the relevant contract." Oneida Indian Nation of New York v. County of Oneida, 617 F.3d 114, 138 (2d Cir. 2010).

## II.    THERE IS NO AVAILABLE ARBITRABLE FORUM

Where parties have contractually agreed to an exclusive forum to arbitrate their disputes and that forum is not available, the proper remedy is to allow the matter to proceed in court. In re Salomon Inc. Shareholders' Derivative Litigation 91 Civ. 5500 (RRP), 68 F.3d 554 (2d Cir. 1995). Importantly, courts do not have the authority under such circumstances to "compel arbitration in another forum." Id. at 559. Moreover, Section 5 of the Federal Arbitration Act

does not permit a court "to circumvent the parties' designation of an exclusive arbitral forum."
Id. at 561.  Rather, Section 5 permits a court to appoint an arbitrator only where (1) "an
arbitration agreement designates an arbitrator or specifies a procedure for selecting an arbitrator,
and one of the parties refuses to comply, thereby delaying arbitration indefinitely" or (2) there
has been "a lapse in time in the naming of the' arbitrators or in the filling of a vacancy on a panel
of a arbitrators, or some other mechanical breakdown in the arbitrator selection process."  Id. at
560.

Here, there can be no doubt that the "parties contemplated one thing: arbitration before
[JAMS]."  Moss v. First Premier Bank, 835 F.3d 260, 266 (2d Cir. 2016).  The Agreement
provides that "binding arbitration [shall be] conducted by JAMS at is Dispute Resolution Center
located in the vicinity of your employment location . . . pursuant to JAMS then-current
Employment Arbitration Rules and Procedures."  see Gangl Decl., Ex. A.  The Agreement does
not (but could have) provided for an alternative forum or a method of selecting an alternate
forum.  See e.g. Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 485 (2d Cir. 2013) ("If both the
NY unconscionability," which "is to deny enforcement of the relevant contract."  Oneida Indian
Nation of New York, 617 F.3d at 138.  SE and NASD decline to arbitrate this matter, the matter
will be arbitrated before the American Arbitration Association ("AAA" in accordance with the
commercial rules of the AAA.")

Moreover, it is uncontested that JAMS is not available to conduct the arbitration.  JAMS
makes clear that "an arbitration demand will not be accepted unless there is full compliance
with" JAMS Minimum Standards which require that, "[a]ll remedies that would be available
under the applicable law in a court proceeding, including attorneys' fees and exemplary
damages, as well as statutes of limitations . . . remain available" to the employee.  Licul Decl.,

Ex. A.  Here, the Agreement requires Keller to waive her right to attorneys' fees and the applicable limitations period.  Moreover, DotDash has refused to waive these provisions. Accordingly, this matter must proceed before this Court as there is no other available forum.

## III.   DOTDASH'S BASELESS REQUEST FOR SANCTIONS

"[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  Christiansburg Garment Co., 434 U.S. at 422 (1978); Gilbert, 2021 WL 169111, at *20 ("In order to encourage her to seek judicial relief, she would be required to pay her adversary's attorneys' fees only if her claim were frivolous, unreasonable, or groundless.").  This standard helps to "avoid chilling the initiation and prosecution of meritorious civil rights actions."  LeBlanc–Sternberg v. Fletcher, 143 F.3d 765, 770 (2d Cir.1998).

Here, Keller's legal position is hardly frivolous, unreasonable or groundless.  Rather, as the numerous cases cited herein make clear, DotDash's efforts to use arbitration to strip Keller of her right to seek attorneys' fees and her ability to bring claims within the applicable limitations period, while preserving these rights for itself, is wholly unlawful.  Indeed, it is particularly disturbing that DotDash makes no effort in its moving papers to address these fatal deficiencies in its arbitration agreement.  One can only assume that DotDash's threat to seek fees is yet another effort to lash out at Keller in retaliation for complaining of discrimination.

## **CONCLUSION**

For these reasons, Keller respectfully requests that the Court deny DotDash's motion in its entirety.

Dated:  March 2, 2021
       New York, New York

**WIGDOR LLP**

By: _____
       Valdi Licul

85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com

*Counsel for Plaintiff*