UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                 :

JACKELYN KELLER,                          :
                                                 :
                    Plaintiff,          :
                                                 :             21-CV-228 (JMF)
        -v-                       :
                                               :          <u>OPINION AND ORDER</u>
ABOUT, INC. d/b/a DOTDASH,          :
                                                 :
                    Defendant.       :
                                                 :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Jackelyn Keller brings claims against her former employer About, Inc., which does business as — and will be referred to here as — Dotdash, under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"); the federal Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"); and the New York State Pay Equity Law, N.Y. Lab. Law §§ 194 *et seq.* ("NYSPEL").  Dotdash now moves, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to compel arbitration and for sanctions.  ECF No. 9.  For the reasons that follow, the motion to compel is granted and the motion for sanctions is denied.

## MOTION TO COMPEL ARBITRATION

The Court begins with Dotdash's motion to compel arbitration. That motion is based on

Keller's Employment Agreement with Dotdash, a three-page offer letter she signed in February

2016, that provides in relevant part, that

> all claims, disputes or controversies arising out of, concerning, or relating to your
> employment relationship, including claims concerning wages or compensation, benefits
> or other terms and conditions of employment, or any other claims whether arising by
> statute or otherwise, shall be fully and finally resolved by mandatory, binding arbitration
> conducted by JAMS . . . pursuant to JAMS['s] then-current Employment Arbitration
> Rules and Procedures. Your agreement to arbitrate applies to all employment-related
> claims, including, but not limited to, claims arising under the Fair Labor Standards Acts,
> Title VII of the Civil Rights Act as amended, the Equal Pay Act, the Pregnancy
> Discrimination Act, the Americans With Disabilities Act, the Age Discrimination in
> Employment Act, the New York Labor Law, the New York Human Rights Law, the New
> York City Administrative Code, or any other federal, state or local employment or
> discrimination laws, rules, regulations, ordinances, including wage and hour laws, or any
> common law claims. . . . [Dotdash] will bear the administrative costs and arbitrator fees,
> and that [sic] the arbitrator in such action may award whatever remedies would be
> available to the parties in a court of law. You understand and agree that you are waiving
> your right to pursue a jury trial or seek attorneys' fees in a civil action, or to commence,
> be a party to or an actual or putative class member of any class or collective action
> arising out of or relating to your employment with [Dotdash] by virtue of this Binding
> Arbitration provision, and further agree that any claim, controversy or dispute must be
> submitted or raised within six (6) months of the time when the event or occurrence giving
> rise to the dispute arose or will be waived by you.

ECF No. 11-1 ("Employment Agreement"), § 4; *see also* ECF No. 11, ¶¶ 5-6.

Notably, Keller does not dispute that her claims in this case fall within the scope of this

broad arbitration clause. *See* ECF No. 16 ("Pl.'s Opp'n"), at 2. Instead, she opposes arbitration

on the ground that the arbitration clause is unconscionable and therefore unenforceable. *See id.*

at 4-14. In particular, Keller contends — relying on New York law — that the clause is "grossly

substantively unconscionable, and therefore unenforceable," for two reasons: first, because it

"shortens the limitations periods for [her] claims in violation of applicable law" and, second,

because it "interferes with [her] ability to recover statutorily authorized damages." Pl.'s Opp'n

6.[1]   In its reply, however, Dotdash agrees to waive the fee-shifting provisions as well as the six-month limitations provision as it pertains to Keller's federal EPA claim.  *See* ECF No. 22 ("Def.'s Reply"), at 1.  "New York courts have accepted offers by parties to waive the enforcement of certain provisions of arbitration agreements, and have evaluated those agreements as modified by the parties' after-the-fact waivers. . . .  Because unconscionability is an equitable defense to the enforcement of harsh or unreasonable contract terms, a party cannot complain when the defendant through its waivers declines to enforce any potentially unconscionable term."  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124 (2d Cir. 2010) (citation omitted).  Accordingly, whether the arbitration clause is enforceable turns on whether application of the six-month limitations period to Keller's non-EPA claims is unconscionable.

"Under New York law, '[a]n unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'"  *McFarlane v. Altice USA, Inc.*, No. 20-CV-1297 (JMF), 2021 WL 860584, at *8 (S.D.N.Y. Mar. 8, 2021) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988)).  "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made — i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably

---

[1]      The parties do not explicitly address choice of law, but Keller's Employment Agreement provides that her "employment w[as] subject to the laws of the State of New York." Employment Agreement § 4.  Additionally, Keller's employment was based in New York; both parties are New York residents, ECF No. 1 ("Compl."), ¶¶ 10-11; Employment Agreement 1; and the parties assume in their briefing that New York law applies.  This "implied consent . . . is sufficient to establish choice of law."  *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) (internal quotation marks omitted); *accord Mason v. AmTrust Fin. Servs., Inc.*, No. 19-CV-8364 (DLC), 2020 WL 6365448, at *2 n.1 (S.D.N.Y. Oct. 29, 2020).

favorable to the other party." *Gillman*, 73 N.Y.2d at 10 (internal quotation marks omitted).
"The procedural element of unconscionability requires an examination of the contract formation
process and the alleged lack of meaningful choice.  The focus is on such matters as the size and
commercial setting of the transaction, whether deceptive or high-pressured tactics were
employed, the use of fine print in the contract, the experience and education of the party claiming
unconscionability, and whether there was disparity in bargaining power."  *Id.* at 10-11 (citation
omitted); *accord Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003).  In
"exceptional cases," however, a provision of a contract can be "so outrageous as to warrant
holding it unenforceable on the ground of substantive unconscionability alone."  *Gillman*, 73
N.Y.2d at 12.

Measured against these standards, Keller's arguments fall short.  First, she fails to offer
sufficient evidence of procedural unconscionability.  Keller is an accomplished and well-
educated executive.  Compl. ¶¶ 17-18; *see, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F.
Supp. 3d 216, 242 (S.D.N.Y. 2020) (explaining that advanced degrees and high compensation
are "both indicative of sophistication for purposes of entry into contract" with an arbitration
provision).  She points to no high-pressure tactics or disparity in bargaining power.  Moreover,
"neither the FAA nor New York law precludes the enforcement of employment contracts 'which
make employment conditional upon an employee's acceptance of mandatory arbitration.'"  *Am.
Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (summary order)
(quoting *Ragone*, 595 F.3d at 121-22).  And contrary to Keller's assertions, the Employment
Agreement does not "'bury[]' important information."  Pl.'s Opp'n 12.  The Agreement as a
whole is only three pages long, and the arbitration clause is contained in a section that states —
in bold and all capital letters, no less — "**BINDING ARBITRATION AND WAIVER OF**

**RIGHT TO PARTICIPATE IN CLASS ACTIONS**.”  Employment Agreement § 4; *see, e.g.*, *Baker*, 778 F. App’x at 27 (“[T]he arbitration-related provisions at issue here are not deceptive or located in fine print. . . .  [O]n the signature page underlined in all-capital type the Agreement states: ‘<u>THIS CONTRACT CONTAINS AN ARBITRATION AGREEMENT WHICH MAY BE ENFORCED BY THE PARTIES.</u>’” (internal quotation marks omitted)); *Carr v. Credit One Bank*, No. 15-CV-6663 (LAK), 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) (“This arbitration clause was clear, conspicuous, and preceded by a heading written in all capital letters and bold print. . . .  Accordingly, plaintiff’s unconscionability argument is rejected.”).

Nor does Keller demonstrate that the arbitration clause, as modified by Dotdash’s waiver, is substantively unconscionable.  Keller first argues that the Employment Agreement did not provide sufficient notice of the federal claims to which the six-month limitations period would apply.  *See* Pl.’s Opp’n 6-7 & n.4.  But that is not the case: Just a few lines above the provision pertaining to the limitations period, the arbitration clause explicitly lists the FLSA, Title VII, the EPA, and “any other federal . . . employment or discrimination laws, rules, regulations, ordinances, including wage and hour laws,” as examples of the employment-related claims covered by its terms.  Employment Agreement § 4.  The Employment Agreement is thus distinguishable from the vague language at issue in the cases upon which Keller relies.  *See Falberg v. Goldman Sachs Grp., Inc.*, No. 19-CV-9910 (ER), 2020 WL 7695711, at *1 (S.D.N.Y. Dec. 28, 2020) (referencing “a claim or action . . . that relates to the Plan and seeks a remedy, ruling or judgment of any kind against the Plan or a Plan fiduciary or party in interest” (internal quotation marks omitted)); *Friedmann v. Raymour Furniture Co.*, No. 12-CV-1307 (LDW) (AKT), 2012 WL 4976124, at *2 (E.D.N.Y. Oct. 16, 2012) (referencing “any claim or lawsuit relating to my service with” the employer (internal quotation marks omitted)); *Vega v.*

*Fed. Express Corp.*, No. 09-CV-7637 (RJH) (GWG), 2011 WL 4494751, at *1 (S.D.N.Y. Sept. 29, 2011) (referencing a "complaint" "[t]o the extent the law allows an employee to bring legal action" (internal quotation marks omitted)).

Keller's argument that the New York statutes pursuant to which she brings her state-law claims do not permit contractually shortening the applicable limitations period is similarly unavailing. *See* Pl.'s Opp'n 8-9. "New York courts . . . enforce contract provisions shortening the limitations period for bringing *any* claim against a party," *Corbett v. Firstline Sec., Inc.*, 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009), where the "shortened statute of limitations . . . is reasonable and agreed to by contract," *Wechsler v. HSBC Bank USA, N.A.*, No. 15-CV-5907 (JMF), 2016 WL 1688012, at *2 (S.D.N.Y. Apr. 26, 2016) (internal quotation marks omitted), *aff'd*, 674 F. App'x 73 (2d Cir. 2017) (summary order); *accord Mason*, 2020 WL 6365448, at *2 (quoting *Stonewall Contracting Corp. v. Long Island R.R. Co.*, 129 N.Y.S.3d 433, 436 (2d Dep't 2020)); *Top Quality Wood Work Corp. v. City of New York*, 595 N.Y.S.2d 22, 22 (1st Dep't 1993). Many courts have upheld six-month limitations periods for the very kinds of claims Keller brings here. *See, e.g.*, *Friedmann*, 2012 WL 4976124, at *3; *Vega*, 2011 WL 4494751, at *6; *Hunt v. Raymour & Flanigan*, 963 N.Y.S.2d 722, 724 (2d Dep't 2013). Indeed, "New York courts have held that a six-month period to bring an employment claim is inherently reasonable." *Ortegas v. G4S Secure Sols. (USA) Inc.*, 65 N.Y.S.3d 693 (1st Dep't 2017) (mem.). At a minimum, the provision is not "so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Gillman*, 73 N.Y.2d at 12.

Similarly, the Court is unpersuaded by Keller's argument that the Employment Agreement's arbitration clause is "unreasonably favorable to" Dotdash. Pl.'s Opp'n 10 (quoting *Thompson v. Body Sculpt Int'l, LLC*, No. 18-CV-1001 (ARR) (GRB), 2018 WL 3235545, at *6

(E.D.N.Y. July 2, 2018)).  "[C]ontract terms which are unreasonably favorable to the other party" are indeed a species of substantive unconscionability, which generally must be paired "together with" procedural unconscionability, i.e., "an absence of meaningful choice on the part of one of the parties," in order to prevent enforcement of a contract provision.  *Lawrence v. Graubard Miller* (*In re Lawrence*), 11 N.Y.3d 588, 595 (2008) (internal quotation marks omitted).  Here, although the six-month limitations period does appear to apply only to claims brought by Keller, both parties are bound to arbitrate their claims, and Dotdash agreed to "bear the administrative costs and arbitrator fees."  Employment Agreement § 4; *see, e.g.*, *Thompson*, 2018 WL 3235545, at *6 (considering whether "both an employer and its employees are bound to an agreement to arbitrate" and  whether "the employer bears any unreasonable cost of the arbitration," alongside whether "the terms of the agreement are equally applicable to both parties," as factors in determining whether  "the arbitration agreement is . . . unreasonably favorable to the employer" (internal quotation marks omitted)).  Once again, therefore, the Court cannot say that the arbitration clause is "so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone."  *Gillman*, 73 N.Y.2d at 12.

Finally, Keller argues that, independent of state law, the arbitration clause is unenforceable under the "effective vindication doctrine," a "judge-made exception to the FAA which allows courts to invalidate agreements that prevent the effective vindication of a federal statutory right."  *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 298 (2d Cir. 2013) (per curiam) (cleaned up); *see* Pl.'s Opp'n 6.  In *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), the Supreme Court construed the doctrine narrowly, explaining that it only "prevent[s] prospective waiver of a party's *right to pursue* statutory remedies, . . .  [which] would certainly cover a provision in an arbitration agreement forbidding the assertion of certain

statutory rights . . . [and] would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* at 236 (cleaned up). In particular, Keller asserts that the six-month limitations period prevents vindication of her statutory rights under the FLSA and NYSEPL. *See* Pl.'s Opp'n 7-8. But Dotdash has waived the shortened limitations period with respect to Keller's claims under the EPA (which is part of the FLSA), Def.'s Reply 1, and the effective vindication doctrine "does not extend to state statutes," *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 936 (9th Cir. 2013); *accord Billie v. Coverall N. Am., Inc.*, 444 F. Supp. 3d 332, 350 (D. Conn. 2020).

To the extent Keller contends that the effective vindication doctrine applies to her other federal law claims, the Court is unpersuaded. Although some courts have held that a shortened limitations period prevents the effective vindication of statutory rights under the FLSA, they have done so by relying on features unique to the FLSA, *see, e.g.*, *Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 299-301 (E.D.N.Y. 2018) (Bianco, J.), which do not apply in other statutory contexts, such as Title VII, *see, e.g.*, *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606 (6th Cir. 2013) ("The Court's rationale for prohibiting waiver of FLSA claims is . . . not present for Title VII claims."). In *Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19 (2d Cir. 2016) (summary order), for example, the Second Circuit rejected an employee's argument that a six-month contractually shortened limitations period prevented the effective vindication of his Title VII claims. The court reasoned that even if the contract required arbitration before statutory administrative remedies could be exhausted, it was "easily construed as reflecting the parties' agreement to waive such requirement, as well as any defense based on that requirement." *Id.* at 23 (internal quotation marks omitted). In any event, the court continued, "the arbitrator would seem to be the appropriate party to determine . . . whether the

six-month statute of limitations should be enforced (with respect to [the plaintiff's] federal discrimination claims or otherwise)." *Id.* Thus, the effective vindication doctrine does not call for overriding Keller's explicit agreement to arbitrate the claims that she brings in this case.[2]

## MOTION FOR SANCTIONS

That leaves Dotdash's request for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. *See* ECF No. 10, at 8-11. Under Section 1927, a court may sanction "an attorney who multiplies the proceedings in any case unreasonably and vexatiously," but such an award "requires a showing that an 'attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay,' and 'a finding of conduct constituting or akin to bad faith.'" *Knopf v. Esposito*, 803 F. App'x 448, 456 (2d Cir. 2020) (summary order) (internal quotation marks omitted) (quoting *60 E. 80th St. Equities, Inc. v. Sapir* (*In re 60 E. 80th St. Equities, Inc.*), 218 F.3d 109, 115 (2d Cir. 2000)). Meanwhile, "the only prerequisites to a district court imposing monetary sanctions

---

[2]     Keller advances one additional argument: that arbitration before JAMS is unavailable because the Employment Agreement provisions of which she complains are incompatible with the JAMS Minimum Standards. Pl.'s Opp'n 14-16. Specifically, Keller argues that the provisions waiving her right to attorney's fees and shortening the limitations period are incompatible with the JAMS Minimum Standards' directive that "[a]ll remedies that would be available under the applicable law in a court proceeding, including attorneys fees and . . . statutes of limitations, must remain available in the arbitration." ECF No. 17-1, at 3. But Dotdash has waived the attorney's fees provision and the shortened limitations period with respect to Keller's EPA claims and, for the reasons stated above, the six-month limitations period as it applies to Keller's remaining claims *would* be enforceable in a court proceeding. Thus, there does not appear to be any conflict with the JAMS Minimum Standards. *See, e.g.*, *Bynum v. Maplebear Inc.*, No. 15-CV-6263, 2016 WL 5373643, at *9 (E.D.N.Y. Sept. 19, 2016) (compelling arbitration where the defendant had waived provisions of an arbitration agreement that potentially conflicted with the JAMS Minimum Standards). In the event that JAMS refuses to accept the parties' dispute for the reasons Keller presses, and Dotdash refuses to waive any offending provision, Keller may move the Court for appropriate relief. *Cf. Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 934-35, 942-44 (N.D. Cal. 2015) (granting a motion to compel arbitration after severing offending provisions following a determination by JAMS that the arbitration agreement did not comply with JAMS's Minimum Standards).

under its inherent power is that a party [1] advanced a colorless claim and [2] did so for improper reasons." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021).  As the Second Circuit has explained, the first requirement "is satisfied where the claim lacks any legal or factual basis.  And the latter may be inferred when an action is so completely without merit as to require the conclusion that it must have been undertaken for some improper purpose."  *Id.* at 368 (cleaned up).

Measured against these standards, Dotdash's request for sanctions is easily rejected. Although the arbitration clause in the Employment Agreement clearly encompassed Keller's claims, she did not argue otherwise.  Instead, she advanced colorable arguments that the arbitration clause was unenforceable.  Notably, Dotdash mooted some of those arguments by waiving several of the provisions that Keller pointed to as unconscionable — but it did not do so fully until its reply.[3]  And while the Court need not and does not reach the enforceability of these waived provisions, it bears noting that some courts have agreed with Keller's arguments when confronted with similar provisions.  *See, e.g.*, *Toure v. Thunder Lube Inc.*, No. 17-CV-657 (DLI) (JO), 2019 WL 4805197, at *5 (E.D.N.Y. Sept. 30, 2019); *Espinosa v. SNAP Logistics Corp.*, No. 17-CV-6383 (AT), 2018 WL 9563311, at *5-6 (S.D.N.Y. Apr. 3, 2018); *Castellanos*, 291 F. Supp. 3d at 299-301.  It follows that Keller's arguments were not so completely without merit as to require the conclusion that they were undertaken for an improper purpose.

---

[3]    In pre-suit communications with Keller's counsel, Dotdash offered to waive the attorney's fees provision "in exchange for Ms. Keller's agreement to submit this matter to arbitration."  ECF No. 12-2, at 5.  But Dotdash appears to have first offered to waive the limitations period pertaining to the EPA claims in its reply brief.

## CONCLUSION

For the foregoing reasons, Dotdash's motion to compel arbitration is GRANTED and the case is STAYED pending arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay [is] requested."); *accord Clearfield v. HCL Am. Inc.*, No. 17-CV-1933 (JMF), 2017 WL 2600116, at *2 (S.D.N.Y. June 15, 2017). Dotdash's request for sanctions is DENIED.

The Court sees no reason to keep the case open pending arbitration. Accordingly, the Clerk of Court is directed to terminate ECF No. 9 and to administratively close the case, without prejudice to either Keller or Dotdash moving by letter-motion to reopen the case **within thirty days of the conclusion of the arbitration proceedings**.

SO ORDERED.

Dated: May 5, 2021
      New York, New York

                                       JESSE M. FURMAN
                                United States District Judge